EUGENE DUBELBEISS, PROSECUTOR, v. TOWN OF WEST HOBOKEN, DEFENDANT.

Submitted December 1, 1910—Decided March 15, 1911.

Section 5 of the *Certiorari* act of 1903 (*Pamph. L., p.* 343), providing that actions of *certiorari* may be heard on notice before a single justice of this court at chambers, and that his determination shall be entered as the judgment of this court, is a valid exercise of legislative power and a judgment so entered is reviewable only by writ of error.

On motion to strike from the files a rule for judgment in *certiorari* made by a single justice at chambers after hearing before him, pursuant to section 5 of the *Certiorari* act, or if such motion be denied, then to review such rule for judgment and set aside the same on the merits.

Before Justices REED, PARKER and BERGEN.

For the motion, *Merritt J. Lane.*

*Contra, Edwards & Smith.*

The opinion of the court was delivered by

PARKER, J. The principal point of attack in this proceeding is section 5 of the *Certiorari* act of 1903 (*Pamph. L., p.* 343), which is challenged as unconstitutional on the ground that it delegates to a single justice who may be selected by a party, the prerogative jurisdiction in *certiorari* that may be exercised only by the court itself. Just what constitutional provision is infringed by this enactment is not indicated.

Section 5, first enacted in 1903, after prescribing the time within which reasons must be filed, provides that "after reasons filed either party may bring the action on for argument on five days' notice before any justice of the Supreme Court at chambers, and his order and determination therein shall be entered as the judgment of said court, and error may be as-

signed thereon; provided, if the action be not noticed for argument before a justice at chambers within fifteen days after reasons filed, the hearing shall be before the Supreme Court as heretofore."

This statute was followed in the present case, and at the time for which argument was noticed, counsel for defendant appeared before the justice, objected to the case going on and requested that the hearing be had before the "Supreme Court," but on the insistment of the opposing counsel his objection was overruled, argument had, and rule for judgment entered in favor of prosecutor and against the defendant. This is the rule that is sought to be stricken from the files.

The holding of the Supreme Court by a single justice is nothing new in our judicial system. In 1799 (*Pat. L., p.* 393) the legislature enacted that the Supreme Court might be held by the Chief Justice or any one of said (associate) justices, and in 1845 (*Pamph. L., p.* 154, § 4) it provided for what is known as the "branch court" in these words:

"That it shall be lawful for the justices of the Supreme Court, at every term thereof, to designate, in such way as to them shall seem proper, one or more of their number to sit during term time in a separate apartment from that in which the regular term is held, for the purpose of hearing and deciding all such matters as, by the rules of the said court, are or may be denominated common business; whose decisions and judgments shall be as good and effectual as if they had been rendered at the bar of said court."

This last sentence was questioned in the case of *Wood* v. *Fithian,* 4 *Zab.* 838, in the Court of Errors and Appeals; and while it appears from the opinion that the point was not raised below in such a way as to require the decision of the appellate court thereon, the matter was evidently thought to be of sufficient importance to consider at length so that any question might, as far as was practicable, be set at rest. It was held— first, that a branch court of one justice was a constitutional Supreme Court; second, that a *certiorari* to the Common Pleas on appeal was "common business." On pages 840 and 841 it is said:

"The act was undoubtedly passed under the impression that the power to regulate the practice and modes of proceeding in the Supreme Court, embraced the power of making provision for the facilitation of suits and the dispatch of business. That as the power was undoubtedly in the legislature of enacting, *that all these matters of common business might be heard by a justice at chambers,* it had the power to say that one or more justices in term time might hear and dispatch this same business, sitting as the Supreme Court, in a separate chamber from the justices who were engaged in hearing cases on the paper. It was not two Supreme Courts which the act contemplated, but one court, dispatching different classes of judicial business by its different members at the same time." See, also, *Gray* v. *Bastedo,* 17 *Vroom* 453, 459.

So far as we are aware, the constitutional propriety of the branch court sitting in term time has never since been challenged; whether such court consist as is now customary of three justices, or two, or only one. For many years there have been two branch courts to hear common business, and recently the practice has grown up of equalizing the work of these three sections by the transfer of business from one to another, a section that has finished its own calendar taking over cases from any other section whose calendar is unfinished; so that any one of the three sections may be sitting as the main court or a branch court according to the character of the business that it is transacting. All this makes for economy of time both of court, counsel and litigants; an economy now essential in view of the increased business of the courts.

Section 5 of the *Certiorari* act had the same purpose in view by authorizing the hearing and determination of one class of common business at chambers. Counsel maintains that the hearing of cases in *certiorari* is not common business, but is in error. Rule 29 designates certain classes of business not including *certioraris* to be "set down by the clerk on the paper" and continues: "Other matters not by this rule directed to be placed on the paper shall come on before the branch of the court assigned to the hearing of common business." That

*certioraris* are common business was decided in *Wood v. Fithian, supra.* Now, in the Practice act, as revised in 1874 (*Revision of 1877, p.* 894), the revisers inserted a section (number 295) providing that "the argument of any motion or cause in the Supreme Court which by the rules and practice of the court is cognizable before the branch * * * sitting for * * * common business may, by the consent of the parties interested, be heard before one or more of the justices of the Supreme Court at chambers either in term time or vacation; whose decisions and judgments shall be as good and effectual as if they had been rendered at the bar of said court." This section occurs in the Practice act of 1903 (*Pamph. L., p.* 537) as section 251, the word "matter" being substituted for "motion or cause," and seems to have stood unchallenged to the present time. It is true that the jurisdiction of a single judge under this last section is dependent on consent; but, as counsel himself insists, consent alone cannot confer jurisdiction on a tribunal originally devoid of it. *School Trustees v. Stocker,* 13 *Vroom* 115; *Collins* v. *Keller,* 29 *Id.* 429, 430; and the existence of this statute for over thirty-five years and constant practice under it are strong evidence of a general consensus of opinion that it is a valid enactment. Like the preceding acts referred to, it was simply in line with the normal development of our judicial system; and the same may be said of the section now attacked. If the legislature in 1874 could confer power on a single justice to hear and determine common business at chambers out of term time by consent, it could, in 1903, confer the same power without consent. Whether the court itself might not by rule have authorized a single judge at chambers to hear *certioraris* or other common business is a question full of interest, but which need not be decided in this case. Such power has been freely exercised. In fact, the court at one time found it advisable to forbid single justices to hear arguments in *certiorari,* as well as to order judgments on *postea* and of *non-pros.;* the last two being now matters of every day occurrence. *Nix. Dig.* 1868, *p.* 1089, *rule* 100.

This is not the first time that section 5 has been questioned. In *Brown* v. *Street Lighting District,* 40 *Vroom* 485, Justice Fort, sitting alone, distinctly affirmed the validity of the act.

In *New Brunswick* v. *McCann,* 45 *Vroom* 171, this court held that a special summary tribunal to consist of one justice of the Supreme Court could not be invested by the legislature with the power of *certiorari;* but reserved the question now under consideration. The distinction between a single justice as a statutory tribunal and as representing or sitting as the court was adverted to in *In re Margarum,* 26 *Id.* 12.

In *Fishblatt* v. *Atlantic City,* 51 *Vroom* 269, a similar reservation was made, but in neither of the last two cases was the point involved. Our own view agrees with that of Mr. Justice Fort in the Brown case. Without going into the powers of the Supreme Court, irrespective of statutory provisions, we think that it was competent for the legislature to facilitate the transaction of common business by making it cognizable before a single justice at chambers. This was the view expressed by Mr. Justice Potts in Wood *v.* Fithian in 1855. Section 5 of the *Certiorari* act is therefore, in our opinion, constitutional and a valid exercise of legislative power.

From this it results that the judgment ordered entered by Mr. Justice Swayze is a final judgment of this court, and reviewable only by writ of error, and cannot be struck from the record as a nullity.

This brings up the second, or alternative motion, to review the judgment as a determination of a single judge at chambers under the practice indicated in *Key* v. *Paul,* 32 *Vroom* 133. But the justice was sitting in this case as the practice branch of the Supreme Court and his decision is not subject to such review. *Garbett* v. *Mountford,* 41 *Id.* 577.

The motions will be denied.